UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFRY PESEK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 5788 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| LADDIE PESEK, JR. and MARCELLE PESEK, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffry Pesek alleges state law claims of breach of an oral contract, breach of fiduciary duty, and, in the alternative, unjust enrichment, against defendants Laddie Pesek, Jr. and Marcelle Pesek based on the Court's diversity jurisdiction. 28 U.S.C. § 1332. Before the Court is defendants' motion to dismiss for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the Court denies defendants' motion.

**Legal Standard**

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392 (7th Cir. 2020). Although the plaintiff bears the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.*; *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Curry*, 949 F.3d at 393 (citation omitted). Also, when analyzing a Rule 12(b)(2) motion

without conducting an evidentiary hearing, courts accept the well-pleaded, undisputed facts in the complaint as true. *Matlin*, 921 F.3d at 705.

**Background**

Keeping in mind that under the circumstances the Court must resolve factual disputes in plaintiff's favor and accept undisputed facts from the complaint as true, the facts are as follows. Jeffry Pesek ("Jeff") alleges that his older brother Laddie Pesek, Jr. ("Laddie") and Laddie's wife, Marcelle Pesek ("Marcelle"), breached an oral contract to create a joint venture to own and operate a waste disposal business. Specifically, Jeff asserts that in late 1997 or early 1998, he proposed to Laddie that they should form a waste disposal company. Jeff also proposed that he would provide the funding and management services for the new company and that Laddie would run the day-to-day operations of the business.

According to Jeff's affidavit presented in response to this motion, he and Laddie had a meeting in late 1997 or early 1998 at their mother's home in Cicero, Illinois. At that meeting, Jeff, Laddie, and Marcelle (via telephone) agreed to start a waste disposal business based out of Harrisonville, Missouri, where Laddie and Marcelle reside. Jeff would provide the capital to start the waste disposal business, including funds to purchase the first truck and to pay for Marcelle's and Laddie's salaries. Laddie, with Marcelle's help, would run the day-to-day operations from Missouri and Jeff would provide management services from Illinois. Jeff asserts that he and Laddie decided that they would be equal partners and make major business decisions together. According to Jeff, although the economic interests of the business were to be equally shared between Laddie and Jeff, the shares of the business would be held in Marcelle's name to allow the business to qualified as a Minority or Women-owned Business ("MWBE").

On February 26, 1998, Town and Country Disposal of Western Missouri, Inc. ("TCD") was incorporated in Missouri and registered with the Missouri Secretary of State. Starting with the 1999

Annual Registration Report, Marcelle was listed as President and Secretary of TCD and Jeff was listed as the Vice President and Treasurer. Marcelle and Jeff were also on TCD's board of directors.

In 2006, Marcelle and Jeff agreed that it would be easier if Jeff was not a TCD officer or director because he was located in Illinois. Marcelle assured Jeff that although he would no longer be listed as a corporate director or officer, nothing would change. Thereafter, Jeff and Laddie continued to run the business and make decisions for TCD, including to reinvest earnings back into the business to expand operations. They also started Town and Country Solid Waste Transfer Station and Town and Country Recycling. Jeff contributed in excess of $350,000 to the businesses over the years.

From 2007 until 2015, Jeff attended business meetings and trade shows on behalf of TCD in Atlanta, Boston, Chicago, Dallas, Las Vegas, and New Orleans. Jeff avers that prior to these conventions, he would communicate with Laddie regarding the business goals they hoped to achieve at the conventions and any specific activities they would undertake to advance TCD's business interests. In March 2010, both Laddie and Jeff attended a Residential Recycling Conference in Chicago.

In 2015, a company named WCA Waste Corporation purchased the stock and assets of the TCD companies. Shortly after the sale, Jeff contacted Laddie about his share of the sale's proceeds. In the end, Laddie did not pay Jeff his shares because Laddie believed his day-to-day running of the businesses for 19 years was worth more than what he called Jeff's "initial investment." Instead, Laddie offered to repay Jeff the $350,000 he invested in the businesses as a loan with 4% compound interest for a total amount of $687,058. Jeff did not accept Laddie's reclassification of his investment as a loan, and Laddie refused to discuss the matter any further with Jeff. In the summer of 2019, Laddie wired $275,500 to Jeff without explanation. When Jeff asked what the $275,000 represented, Laddie said "that's it." According to Jeff, Marcelle and Laddie have failed to respond

3

to his demands for full payment of his shares resulting from the sale of their joint venture.

**Discussion**

The Court's personal jurisdiction over Jeff's claims against his brother and sister-in-law is circumscribed by both Illinois law and federal due process. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.,* 965 F.3d 571, 575 (7th Cir. 2020). It is well-settled that "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," thus the Court's inquiry is whether the exercise of personal jurisdiction over the defendants comports with federal due process. *Curry*, 949 F.3d at 393 (citation omitted).

Jeff maintains that he has established specific personal jurisdiction over Laddie and Marcelle. *See J.S.T. Corp.,* 965 F.3d at 575. To show specific personal jurisdiction, defendants' contacts with Illinois must be directly related to the challenged conduct, in this case, the breach of the contract to own and operate TCD. *Curry*, 949 F.3d at 395; *Matlin*, 921 F.3d at 705. The Court's inquiry focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). There are three "essential requirements" to establish specific personal jurisdiction: (1) defendants must have purposefully availed themselves of the privilege to conduct business in the forum state or purposefully directed their activities at the state; (2) plaintiffs' injuries resulted from the defendants' forum-related activities; and (3) the federal court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.,* 938 F.3d 874, 878 (7th Cir. 2019).

In their affidavits, Laddie and Marcelle deny that they discussed a joint business venture with Jeff, that they ever discussed any such business in Illinois, and that Jeff provided management services for TCD. They also assert that the money Jeff provided to them was merely a loan. In essence, Laddie and Marcelle deny the existence of the alleged joint venture to own and operate TCD, but fail to recognize that when there is a factual conflict in the record, courts must resolve any

4

such conflict in plaintiff's favor at this juncture. *Curry*, 949 F.3d at 393. Here, not only has Jeff presented his affidavit in support of his involvement with the ongoing joint venture and defendants' purposeful contacts with Illinois when forming and operating TCD, but records from the Missouri Secretary of State's office indicate that Jeff was listed as an officer and director of TCD from 1999-2005. Evidence also shows that Laddie called Jeff in Illinois to ask him to be an officer of TCD when the company was being formed and that Laddie and Jeff talked on the phone and in person in Illinois about the business. There is also evidence that Laddie sent Jeff bid proposals for potential customers to Illinois and Jeff purchased equipment for TCD in Illinois.

Equally important, defendants fail to sufficiently address Jeff's legal arguments that he has established specific personal jurisdiction. For example, defendants do not address the argument that by agreeing to participate in an ongoing joint venture with Jeff, a resident of Illinois, they created continuing obligations between themselves and a resident of the forum. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). Rather, defendants deny ever being physically present in Illinois in relation to the alleged joint venture, although the evidence Jeff presents suggests otherwise. In any event, being physically present in Illinois when transacting TCD business is not necessary to establish sufficient minimum contacts. *Curry*, 949 F.3d at 398. As the Supreme Court explained over 35 years ago, "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

As to the last specific jurisdiction requirement, this Court's exercise of personal jurisdiction over defendants does not offend traditional notions of fair play or substantial justice. Illinois has a strong interest in providing a forum for its residents to seek redress for injuries suffered due to defendants' forum-related activities. *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012).

On a final note, the Court need not address defendants' statute of frauds argument in relation to the alleged oral contract because they made this argument for the first time in their reply brief, and thus it is waived. *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021).

**Conclusion**

For these reasons, the Court denies defendants' Rule 12(b)(2) motion to dismiss [18].

**IT IS SO ORDERED.**

Date: 9/17/2021

Entered:
SHARON JOHNSON COLEMAN
United States District Judge